UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELIZABETH MAGANA,

        Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

No. 2:17-cv-1809-KJN

ORDER

Plaintiff Elizabeth Magana seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") that plaintiff was not disabled for purposes of receiving Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] Plaintiff filed a motion for summary judgment, which the Commissioner opposed by filing a cross-motion for summary judgment. (ECF Nos. 14, 15.) No optional reply brief was filed. For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 8.)

1

I.  BACKGROUND

Plaintiff was born on April 8, 1974; has a limited education; can communicate in English; and previously worked as a day worker and janitor. (Administrative Transcript ("AT") 32-33.)[2] On July 31, 2012, plaintiff filed an application for SSI, alleging that she was unable to work as of July 31, 2012, due to carpal tunnel syndrome in both wrists and related surgery. (AT 19, 151, 276, 320.) After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on June 11, 2015, and September 24, 2015, respectively, and at which plaintiff, appearing with counsel, and a vocational expert ("VE") testified. (AT 19, 40-72, 73-114.) The ALJ subsequently issued a decision dated June 23, 2016, determining that plaintiff had not been disabled, as defined in the Act, from July 31, 2012, the date that plaintiff's SSI application was filed, through the date of the ALJ's decision. (AT 19-34.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 28, 2017. (AT 1-6.) Plaintiff subsequently filed this action on August 30, 2017, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ erroneously found plaintiff's depression not severe at step two of the sequential evaluation; (2) whether the ALJ improperly discounted plaintiff's credibility; and (3) whether the ALJ's RFC and hypothetical to the VE failed to include all necessary limitations.

III.  LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff had not

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

3

engaged in substantial gainful activity since July 31, 2012, plaintiff's SSI application filing date. (AT 22.) At step two, the ALJ found that plaintiff had the following severe impairments: cervical spine degenerative disc disease; thoracic spine stenosis; lumbosacral strain; bilateral carpal tunnel syndrome, status post release surgery; bilateral pronator syndrome, status post nerve release; obesity; and borderline intellectual functioning. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 25.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b) except she can sit for one hour at a time and for a total of eight hours in an eight-hour workday; can stand and/or walk for one hour at a time and for a total of six hours in an eight hour work day; can occasionally climb, stoop, and kneel; can never crouch or crawl; can frequently handle, finger, and feel with the bilateral upper extremities; can frequently use the bilateral lower extremities to operate foot controls; must avoid concentrated exposure to humidity, to extreme cold, and to extreme heat; and can perform simple tasks.

(AT 26.) At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 32.) Nevertheless, at step five, the ALJ determined that, considering plaintiff's age, education, work experience, and RFC, and in reliance on the VE's testimony, there were jobs that exist in significant numbers in the national economy that plaintiff could perform. (AT 33.)

Consequently, the ALJ concluded that plaintiff had not been disabled, as defined in the Act, from July 31, 2012, plaintiff's SSI application filing date, through June 23, 2016, the date of the ALJ's decision. (AT 34.)

////

////

////

---

process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

<u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*Whether the ALJ erroneously found plaintiff's depression not severe at step two of the sequential evaluation*

Plaintiff's argument that the ALJ erroneously found plaintiff's depression not severe at step two lacks merit.

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the Ninth Circuit Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

In this case, consultative examining psychologist, Dr. David Richwerger, who was the only acceptable medical source concerning plaintiff's mental health impairments, diagnosed plaintiff with an unspecified depressive disorder, which he characterized as mild. (AT 618.) It is well established that a condition that produces only mild symptoms or functional limitations does not significantly limit a claimant's ability to do basic work activities. See, e.g., <u>Lusardi v. Astrue</u>, 350 Fed. App'x 169, 172 (9th Cir. Oct. 30, 2009) (unpublished) (evidence of mild to no functional limitations attributable to a diagnosis of major depressive disorder sufficient to support a non-severe finding); <u>Stenberg v. Comm'r</u>, 303 Fed. App'x 550, 552 (9th Cir. Dec. 16, 2008) (unpublished) (no severe mental impairment based on diagnosis of mild depressive disorder and only mild difficulties in maintaining social functioning, concentration, persistence, and pace).

Moreover, even assuming *arguendo* that the ALJ technically erred by not finding plaintiff's depression severe at step two, such error was harmless if the ALJ proceeded to consider the effects of that impairment at subsequent steps. See <u>Lewis v. Astrue</u>, 498 F.3d 909, 911 (9th Cir. 2007). Here, the ALJ explicitly discussed plaintiff's depression, as well as Dr. Richwerger's assessment containing the diagnosis of depression, at subsequent steps in the

5

sequential disability evaluation. (AT 30, 32.)

In sum, the court finds no reversible error at step two.

*Whether the ALJ improperly discounted plaintiff's credibility*

In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

<u>Lingenfelter</u>, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 693 (9th Cir. 2009) (quoting <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." <u>Id.</u> at 959.

Here, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's allegations of disabling symptoms and functional limitations.

The ALJ reasonably determined that plaintiff's allegations were inconsistent with the overwhelming weight of the medical opinion evidence in the record. (AT 27-32.)[4] Consultative examiner and board certified internal medicine specialist Dr. Satish Sharma examined plaintiff on October 19, 2013, and opined that plaintiff was limited to frequently holding, feeling, and fingering objections with both hands, but had no limitation in sitting, standing, walking, lifting, or posture. (AT 425-30.) Additionally, consultative examiner and board certified orthopedic specialist Dr. Dale van Kirk examined plaintiff on November 7, 2015, and opined that plaintiff could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; sit/stand/walk for 1 hour at a time without interruption; sit for 8 hours and stand/walk for 6 hours total in an 8-hour work day; frequently operate foot controls; occasionally climb stairs/ramps/ladders/scaffolds, stoop, and kneel, but never crouch or crawl; occasionally be exposed to humidity and wetness, and never be exposed to extreme cold or heat; and did not have any manipulative limitations. (AT 599-609.) Furthermore, consultative examiner and psychologist Dr. Richwerger examined plaintiff on December 1, 2015; diagnosed plaintiff with borderline intellectual functioning and a mild unspecified depressive disorder; and assessed only mild mental limitations, except for a moderate limitation as to understanding and remembering complex instructions. (AT 612-21.) Because the above-mentioned providers personally examined plaintiff and made independent clinical findings, their opinions constitute substantial evidence on which the ALJ was entitled to rely.

Additionally, the ALJ rationally found that plaintiff's daily activities belied her allegations of functional limitations at a disabling level. (AT 31.) "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable

---

[4] Indeed, on appeal, plaintiff does not challenge the ALJ's weighing of the medical opinion evidence through any substantive briefing or argument. Thus, any such issue is waived. See Carmickle v. Comm'r, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

7

to a work setting….Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, at the June 11, 2015 administrative hearing, plaintiff testified that she was the primary caregiver for a 16-year-old and a disabled 9-year old, including cooking, cleaning, doing the laundry, and making their beds. (AT 45-46.) She walked her 9-year-old to and from school every day, bathed him, and helped him with his homework, sometimes using pencils and scissors. (AT 47-48.) At the second September 24, 2015 hearing, plaintiff admitted that she cooked at least once a day, cleaned her home and bathtub, mopped, did laundry, and went grocery shopping twice a week. (AT 96-97.) She also attended monthly group meetings for anger management. (AT 103.) Furthermore, at her December 1, 2015 consultative examination, plaintiff told Dr. Richwerger that she did household chores and errands, cooked, bathed and dressed herself, took care of her personal needs, handled her own financial affairs, and got along okay with family and relatives even though she did not interact much with friends and neighbors. (AT 614.)

To be sure, the record also contains some contrary evidence, suggesting that plaintiff's activities at times were more limited. However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit Court of Appeals explained:

8

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Consequently, the court finds that the ALJ's evaluation of plaintiff's credibility was supported by the record and by the proper analysis.

*Whether the ALJ's RFC and hypothetical to the VE failed to include all necessary limitations*

Finally, plaintiff argues that remand is warranted because the ALJ's RFC and corresponding hypothetical to the VE failed to include various necessary limitations supported by substantial evidence in the record. That argument is unpersuasive.

First, the ALJ was not required to include a specific limitation in the RFC that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace attributed to her borderline intellectual functioning. As an initial matter, the ALJ specifically limited plaintiff to simple tasks, which logically present less challenges pertaining to concentration, persistence, and pace. Moreover, the Ninth Circuit has already held that moderate mental limitations do not even require vocational expert testimony. Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007).[5]

Second, plaintiff's argument that the ALJ's findings regarding certain representative occupations at step five violated Zavalin v. Colvin, 778 F.3d 842 (9th Cir. 2015), at best amounts

---

[5] In Hoopai, a medical source determined that the claimant was moderately limited in "his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007). After the ALJ utilized the Grids at step five to determine that the claimant was not disabled, plaintiff contended on appeal that the ALJ was required to seek vocational expert testimony regarding the limitations assessed. Id. at 1075. The Ninth Circuit rejected this argument, holding that these moderate limitations were not sufficiently severe to prohibit the ALJ from relying on the Grids without the assistance of a vocational expert. Id. at 1077.

9

to harmless error. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). In Zavalin, the Ninth Circuit held that there is an apparent conflict between a RFC to perform simple, repetitive tasks and the demands of Level 3 Reasoning occupations as classified by the Dictionary of Occupational Titles ("DOT"). Zavalin, 778 F.3d at 847. Plaintiff contends that the ALJ's RFC for simple tasks thus conflicts with the ALJ's finding at step five that plaintiff could perform the representative occupations of cashier (which requires Level 3 Reasoning) and information clerk (which requires Level 4 Reasoning). See DOT 211.462-010 (cashier); DOT 237.367-022 (information clerk). Even assuming, without deciding, that Zavalin applies to a RFC for simple tasks as opposed to simple, *repetitive* tasks, the ALJ here also found that plaintiff could perform the representative occupation of office helper, which only requires Level 2 Reasoning. See DOT 239.567-010. The VE testified that there were 255,000 office helper positions in the national economy, which is a significant number of jobs under Ninth Circuit case law. (AT 34, 107.) See Gutierrez v. Comm'r, 740 F.3d 519, 529 (9th Cir. 2014) (affirming an ALJ's finding that 25,000 jobs nationally were a significant number of jobs).

Third, although plaintiff correctly notes that the ALJ's hypotheticals to the VE did not encompass all of the limitations included in the RFC, those omissions were inconsequential to the ultimate non-disability determination. According to the DOT, the representative occupation of office helper involves no climbing, kneeling, crouching, or crawling; only occasional stooping (consistent with the RFC); and no exposure to extreme heat, extreme cold, or humidity. See DOT 239.567-010. The DOT also does not mention the operation of foot controls, which plaintiff can perform frequently. Id. Therefore, adding such limitations to the hypothetical posed to the VE would not plausibly have changed the VE's testimony that plaintiff could perform the representative occupation of office helper.

Fourth, in light of the court's conclusion that the ALJ properly evaluated plaintiff's depression and plaintiff's subjective statements, the ALJ was not required to incorporate any additional social limitations or manipulative limitations into the RFC or corresponding hypothetical to the VE.

## V. CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

Dated: November 15, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE